IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
   *Plaintiff*,

v.

GEORGE LAMAR PLUNKETT,
   *Defendant*.

Civil Action No. ELH-12-3606
Criminal No. ELH-11-00258

## MEMORANDUM OPINION

On April 16, 2012, petitioner George Plunkett pled guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. *See* Plea Agreement (ECF 196-1) at 1. Judgment was entered on June 29, 2012. ECF 134. On December 10, 2012, Plunkett filed a "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Motion," ECF 162).[1] On December 17, 2012, the Court ordered the Government to respond to Plunkett's Motion. *See* ECF 163. The due dates were subsequently extended through May 16, 2013. *See* ECF 179; ECF 188. On that date, the Government filed a "Memorandum in Opposition to Petition to Vacate Sentence Pursuant to 28 U.S.C. § 2255" ("Opp.," ECF 196), along with a copy of the Plea Agreement and a transcript of Plunkett's sentencing hearing ("Transcript," ECF 196-2). Plunkett timely filed a "Response to Government's Memorandum in Opposition to Petition to Vacate Sentence Pursuant to 28 U.S.C. § 2255" ("Plunkett Resp.," ECF 207).

---

[1] Although Plunkett was represented by counsel in the trial court, he is now self-represented.

The Motion is ripe for decision, and no hearing is necessary to resolve it. *See* Local Rule 105.6. Because the petition and the record conclusively show that Plunkett is not entitled to relief on the grounds asserted, I will deny the Motion. *See* 28 U.S.C. § 2255(b); *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## Background[2]

Commencing in or about August 2010 and continuing through May 2011, Plunkett was a member of a cocaine-trafficking organization in and around Baltimore. Plunkett and his co-conspirators obtained large quantities of cocaine from suppliers in California and arranged to ship the cocaine to Maryland. Plunkett and his co-conspirators then processed and packaged the cocaine for distribution in the Baltimore area. In all, Plunkett and his co-conspirators conspired to distribute at least 50 kilograms of cocaine but less than 150 kilograms of cocaine.

By plea agreement dated January 13, 2012, signed by Plunkett on April 3, 2012, Plunkett agreed to plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) (commonly referred to as a "C plea"). *See* Plea Agreement at 5. Under the terms of the Plea Agreement, the parties agreed that a sentence of 180 months' imprisonment was the appropriate disposition. That sentence was well below the advisory sentencing guidelines range of 262 to 327 months' incarceration. *Id.*; *see* Transcript at 7. In addition, the defendant faced a mandatory minimum sentence of ten years, with a maximum of life imprisonment. And, the Government could have filed an "851 notice," by which the defendant would have faced a mandatory minimum sentence of 20 years. *See* 21 U.S.C. § 851.

---

[2] The facts regarding Plunkett's criminal activity are derived from Plunkett's Plea Agreement, to which he stipulated. *See* Plea Agreement at 10.

While Plunkett awaited sentencing, he was housed in Baltimore at the Chesapeake Detention Facility ("CDF"). Transcript at 3. At the sentencing hearing, Plunkett's attorney complained about the conditions at CDF. *Id.* In particular, counsel averred that CDF is "unsanitary"; the jail cells are infested with mice and cockroaches; the facility does not have functioning air conditioning and thus becomes "unbearably hot" in the summer; and the inmates lack access to a law library, religious services, and daily recreation. *Id.* at 3–4. Additionally, counsel advised the Court that the "food apparently does not meet the federal guidelines for food for those people detained in a federal facility, and . . . that the toilets frequently don't work, and that water frequently doesn't run." *Id.* at 4.

In light of these alleged conditions, defense counsel requested either a downward departure in Plunkett's sentence or that Plunkett receive "double credits" for the time he served at the CDF. *Id.* at 3. When the Court asked counsel to identify authority for a departure from the guidelines on such grounds, particularly in the context of a C plea, *id.* at 5, counsel responded: "Quite honestly, I don't know the answer. . . . There is a case in the Second Circuit from 1996, United States of America versus Carlos Hernandez-Santiago, at 92 F.3d 97 [(2d Cir. 1996)], which deals with the issue, but it was not a (c) plea, and a departure was provided." *Id.* After counsel read aloud a passage from the opinion, the Court commented that the case was not "comparable" to that of Mr. Plunkett. *Id.* at 6. The Court then stated, *id.*:

> [Y]ou have a job to do for your client, and I respect that, counsel, but this isn't something we needed to raise now. Why wouldn't you cite this case to me and let me know, and let the government know you were going to make this an issue?
> To me, this is an attempt to make an end run around the (c) plea, which is already below the guidelines.

In response, counsel explained, *id.* at 7:

> My client, Your Honor, has asked me to make this argument, and has raised it with me on several occasions.
> I told him, to be honest with the Court, I told him it's a (c) plea, and I am not sure that the Court can provide a departure. I said perhaps the Court can give you additional credits for time served based on the living conditions; but quite honestly, I have no legal precedent for that.

The Government opposed Plunkett's request, noting that it viewed the request "as a breach of the (c) plea. . . ." *Id.* at 9. It also suggested that, "if Mr. Plunkett wants to persist in his request for a downward departure, then we could withdraw from the (c) plea, and the government will begin negotiations with the guidelines at 262 to 327 [months]." *Id.* at 9. Although the Government acknowledged "the heat issue" at CDF, *id.* at 10, it denied counsel's other contentions and argued that the conditions were not "so deplorable that somehow there should be some additional credit given to the time he has already served." *Id.* at 11.

The Court stated that it did not have "any knowledge of the particulars" of Plunkett's contentions regarding CDF, "with the exception of the air-conditioning . . . and hopefully that is being addressed." *Id.* at 12. The Court declined to award double credit or make a downward departure, stating, *id.*: "I think we would have to actually litigate the merits of your assertions, and even then, I think that this was a (c) plea. So if your client wants to go along with the (c) plea, that's what we are here to do." *Id.* Counsel affirmed that his client wished to agree to the C plea. *Id.* After the Court heard from counsel and the defendant, the Court addressed the congressionally mandated purposes of sentencing and other factors set forth in 18 U.S.C. § 3553(a). It then imposed the agreed-upon sentence of 180 months' imprisonment, pursuant to the C Plea. *Id.* at 27.

**Contentions**

Plunkett asserts that he received ineffective assistance of counsel. The gravamen of Plunkett's contention is that defense counsel was inadequately prepared for the sentencing hearing and erroneously couched his request as one for a downward departure from the guidelines, rather than as one for double credit for time served during the pendency of the case. In particular, Plunkett claims that counsel "wasn't prepared and didn't conduct a proper investigation and prepare a proper report to the court with case law authority." Plunkett Resp. at 5. As a result, "he tried to wing it in the court room and made the error of asking for a downward departure, either not knowing or not caring that the argument was doomed to fail . . . but the awarding of double credit of prior jail time was well within the district court judges [sic] authority." *Id.*

**Discussion**

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner shows "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." One well-recognized basis for relief under § 2255 is a violation of the Sixth Amendment right to effective assistance of counsel. *See generally Missouri v. Frye*, ____ U.S. ____, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To challenge successfully a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See Chaidez v. United States*, ____ U.S. ____, 133 S. Ct. 1103, 1107–8 (2013); *Lafler*, 132 S. Ct. at 1384; *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

First, the petitioner must show that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases," *Strickland*, 466 U.S. at 687, and was "below an objective standard of reasonableness," measured by "prevailing professional norms." *Id.* at 688. "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 446 U.S. at 689).

Second, the petitioner must show that counsel's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 697; *see Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (stating that, under the second prong, the petitioner must prove that the "result of the proceeding was fundamentally unfair or unreliable").

In this case, I conclude that Plunkett is not entitled to habeas relief for ineffective assistance of counsel because Plunkett is unable to demonstrate that counsel's performance was deficient.

Plunkett initially contends that his lawyer erroneously framed his request as one for a "downward departure" rather than for "double credit." Plunkett Resp. at 5. However, contrary to Plunkett's assertion, counsel did request "double credit." In particular, counsel stated that he was "asking the Court to consider in this case either a departure, *or taking the credit he would normally get for time served and doubling it. In other words, he would get two days for every day that he was detained.*" Transcript at 4 (emphasis added).

Petitioner next contends that his attorney was ineffective because he failed to "conduct a proper investigation and prepare a proper report to the court with case law authority" supporting the propriety of awarding of double credit for unsanitary pretrial conditions. Plunkett Resp. at 5. However, the Transcript reveals that counsel did conduct legal research on the matter, but was unable to find any supporting, on-point authority. *See* Transcript at 5–7. Notably, Plunkett has not identified any case his lawyer overlooked, in which double credit was awarded for conditions of pretrial confinement in the context of a C plea,[3] and I have been unable to uncover any such cases. Thus, counsel's failure to uncover a case in which double credit was awarded for conditions of pretrial confinement in the context of a C plea resulted not from a lack of effort or competence, but rather from the absence of such a case. Moreover, although defense counsel admitted that he had been unable to find a controlling case, he did identify a Second Circuit case, *U.S. v. Hernandez-Santiago*, 92 F.3d at 101 n.2, in which the trial court departed downward because the defendant had spent 22 months of pretrial confinement in a state facility that lacked the "educational and therapeutic programs" of a federal prison. However, I rejected the

---

[3] In his Motion, Plunkett cites to *Neri-Castellanos v. U.S.*, No: 10-70146, U.S. Dist. LEXIS 75043 (D.S.C. 2010). However, the court in that case *rejected* the petitioner's argument, and it was in the context of a request for a downward *departure*. Nor did that case involve a C plea.

comparison as inapt, noting that the downward departure was not given in the context of a C plea. Transcript at 6.

Plunkett also insists that defense counsel was ineffective for failing to submit documentary evidence of the conditions at CDF or request an evidentiary hearing. Although counsel did not provide the Court with evidence of the conditions at CDF, his decision not to do so was not deficient. Defense counsel was keenly aware of the lack of legal precedent for his position, and his decision not to pursue a fruitless strategy does not amount to ineffective assistance. *See United States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001); *Higgs v. United States*, 711 F. Supp. 2d 479, 533 (D. Md. 2010).

It is also noteworthy that the Government made clear at sentencing that it viewed the defense request as a breach of the plea agreement and, if Plunkett persisted in his request for a downward departure or double credit, the Government indicated that it would withdraw from the agreement and begin plea negotiations in the guidelines range of 262 to 327 months' imprisonment. In those circumstances, it was not unreasonable for counsel to decline to pursue an evidentiary hearing that might lead to an *increased* sentence for his client. Simply put, defense counsel's performance does not become deficient simply because he declines to follow his client off of a cliff.

Finally, it bears mentioning that by negotiating a sentence of 180 months, Plunkett's attorney obtained a sentence substantially below the guidelines range of 267 to 327 months' imprisonment. Thus, the plea agreement that counsel reached with the Government significantly benefited Plunkett. In light of defense counsel's willingness to present Plunkett's argument, the terms of the plea agreement, and the below-guidelines sentence that Plunkett received, counsel's

conduct was clearly "within the wide range of reasonable professional assistance." *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689). Accordingly, Plunkett's claims do not meet the first prong under *Strickland*. Therefore, the petition will be denied.[4]

**Conclusion**

For the foregoing reasons, the Court will deny the Motion. A separate Order follows.


Date: November 27, 2013                      /s/
                                    Ellen Lipton Hollander
                                    United States District Judge

---

[4] Because I find that counsel's performance was not deficient, I need not address the prejudice prong of the *Strickland* test. However, given the lack of precedent for awarding double credit in the context of a C plea, there is not a reasonable probability that the result of the proceeding would have been different had counsel not performed in the allegedly deficient manner.