IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. ELH-11-258 |
| GEORGE PLUNKETT,<br>  *Defendant.* | |

**MEMORANDUM OPINION**

On July 27, 2020, George Plunkett, through counsel, filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 577. The Motion is supported by a memorandum of law (ECF 579) (collectively, the "Motion") and four sealed exhibits, including extensive medical records. ECF 579-1 to ECF 579-4. The government opposes the Motion (ECF 585) and submitted five sealed exhibits. ECF 585-1 to ECF 585-5. Defendant has replied. ECF 588.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion.

### I.  Background

A grand jury in the District of Maryland returned an indictment on May 5, 2011, charging Plunkett and five codefendants with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. ECF 1. In a superseding indictment returned on August 25, 2011, a forfeiture count was added. ECF 59.

On April 16, 2012, Plunkett entered a plea of guilty to the superseding indictment. ECF 98. Plunkett tendered his guilty plea pursuant to a Plea Agreement (ECF 99), and under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of 180 months' imprisonment as the appropriate disposition. *Id.* ¶ 9. Plunkett's Plea Agreement also stipulated that Plunkett

qualified as a Career Offender, pursuant to § 4B1.1(a) of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G"). *Id.* ¶ 6(a). The parties contemplated a base offense level of 37, and a Criminal History Category of VI. *Id.* ¶¶ 6, 7.

The Plea Agreement included a stipulation of facts. *Id.* at 10. According to the stipulation, from August 2010 until May 2011, Plunkett was a member of a cocaine-trafficking organization that conspired to "obtain large quantities of cocaine from sources of supply in California and ship the cocaine to Maryland." *Id.* Plunkett admitted that "it was foreseeable to [him]" and "in furtherance of the conspiracy" that he conspired to "distribute and possess with the intent to distribute at least 50 kilograms but less than 150 kilograms of cocaine." *Id.*[1]

The Presentence Investigation Report ("PSR," ECF 579-3) deemed Plunkett a Career Offender, as anticipated. *Id.* ¶ 19. This is because he had three prior felony drug convictions, which dated to 1991, 1995, and 1998, when the defendant was 18, 22, and 25 years of age, respectively. *Id.* ¶¶ 24-34. The defendant received a sentence of seven years of incarceration for the first offense and served a total of three years in prison. *Id.* ¶¶ 24, 27. And, for the second and third offenses, he was sentenced to eight and ten years respectively, and served about half of the sentences in both instances. *Id.* ¶¶ 29, 32.

As a Career Offender, the defendant an Offense Level of 37, before deductions for acceptance of responsibility. After deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, Plunkett's final offense level was 34. *Id.* ¶ 21. And, as a Career Offender, his Criminal History was VI. *Id*. ¶ 36. Therefore, based on an offense level of 34 and a Criminal

---

[1] Facts from the cases of Plunkett's codefendants also demonstrate that the organization was trafficking large quantities of cocaine. For example, one of Plunkett's codefendants was caught driving a trailer from California to Maryland with 136 kilograms of cocaine. The drugs had an approximate wholesale value of $4,060,000, and an approximate street value of $13,600,000.

History of VI, Plunkett's Guidelines called for a period of incarceration ranging from 262 to 327 months of imprisonment. ECF 579-3, ¶ 46.[2] He was also subject to a mandatory minimum term of 10 years' imprisonment. *Id.* ¶ 45

Sentencing was held on June 29, 2012. ECF 133. At the time, the defendant was 39 years old. ECF 579-3 at 1. He stood 6 feet 2 inches tall and weighed 300 pounds. *Id.* ¶ 61. That equated to a BMI of 38.5. ECF 585 at 18 n.10. Pursuant to the Plea Agreement, the Court imposed a term of imprisonment of 180 months of imprisonment. ECF 134 (Judgment). Thus, Plunkett's sentence was well below the advisory sentencing guidelines range of 262 to 327 months' incarceration. ECF 579-3, ¶ 46. It was also below the Guidelines for a non-Career Offender. The sentence dated to May 16, 2011, when Plunkett was arrested. *See* ECF 579-3 at 1; ECF 585-1 at 3.

Plunkett filed a motion to vacate under 28 U.S.C. § 2255 on December 10, 2012, arguing ineffective assistance of counsel. ECF 162. That motion was denied by Memorandum Opinion and Order of November 27, 2013. ECF 254; ECF 255. Plunkett subsequently moved for a sentence reduction on April 18, 2016. ECF 464. The Court denied Plunkett's motion on May 11, 2016. ECF 470. And, Plunkett filed another motion to vacate on May 26, 2016 based on *Johnson v. United States*, 135 S. Ct. 2551 (2015) (ECF 478), which was also denied by Memorandum Opinion and Order of December 13, 2016. ECF 495; ECF 496.

Plunkett, who was born in 1972, is now 47 years of age. ECF 579 at 3. He is presently incarcerated at FCI Cumberland, a medium security facility. *Id.* Notably, he has served about 112 months of his sentence. *Id.* at 1. This equates to about 62% of the sentence, exclusive of

---

[2] If defendant were not a Career Offender, his final offense level would have been 36. ECF 579-3, ¶¶ 18, 20, 21. His Guidelines would have been 188-235 months. And, his Criminal History Category would have been IV. *Id.* ¶ 36.

good time credits under 18 U.S.C. § 3624(b). ECF 585 at 3. Accounting for good time credit, he has served about 75% of his sentence. *Id.* at 4. Defendant has a projected release date of February 24, 2023. *Id.*; ECF 585-1 (Inmate Data) at 3.

Plunkett's medical history includes diabetes, hypertension, hyperlipidemia, obesity, and interstitial pulmonary disease. ECF 579 at 3, 7. Defendant was hospitalized in January 2010 at Sinai Hospital of Baltimore for Type II diabetes and high blood pressure, and was prescribed a range of medications to treat both. ECF 579-3, ¶ 61. Moreover, while he was incarcerated, defendant was diagnosed with colon cancer and underwent three major surgeries. ECF 579 at 7. He petitioned the Warden at FCI Cumberland on June 16, 2020, and again on June 26, 2020, seeking a reduction in sentence. ECF 579 at 4; *see* ECF 579-2. The Warden denied Plunkett's request. *Id.*

Additional facts are included, *infra*.

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030

(1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, ___ F. App'x ___, 2020 WL 5412762, at * 1 (4th Cir. Sept. 9, 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving

6

illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

7

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Court may not rely on the Program Statement, however. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 2020 WL 5412762, at * 1.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[3]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[4] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

---

[3] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[4] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of September 22, 2020, COVID-19 has infected more than 6.8 million Americans and caused over 200,400 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Sept. 22, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020).  Indeed, for a significant period of time, life as we have known it came to a halt.  Although many businesses have reopened, many

are subject to substantial restrictions. And, in view of the recent resurgence of the virus, businesses are again facing closure.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type II diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now

identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be

considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 585 at 12-14 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

12

As with the country as a whole, however, the virus persists in penal institutions.[5]  As of September 22, 2020, the BOP had 126,798 federal inmates and 36,000 staff.  Also as of September 22, 2020, the BOP reported that 1,948 inmates and 672 BOP staff currently tested positive for COVID-19; 12,330 inmates and 1,099 staff had recovered from the virus; and 122 inmates and two staff member have died from the virus.  And, the BOP has completed 56,220 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 22, 2020).  *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Cumberland, where the defendant is a prisoner, as of September 21, 2020, the BOP reported that no inmates have currently tested positive for COVID-19, 9 inmates have pending tests, and 7 inmates and 6 staff have recovered at the facility.  And, the facility has completed 225 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 21, 2020).

### IV.   Discussion

Plunkett moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19.  ECF 579 at 7.  Moreover, Plunkett also contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served.  *Id.* at 12-13.

In particular, defendant suffers from multiple conditions identified by the CDC as risk factors, including Type II diabetes, obesity (BMI of 36.1), hypertension, hyperlipidemia, and interstitial pulmonary disease.  *Id.* at 1; *see* ECF 585-4.  Further, in 2014 Plunkett was diagnosed with a malignant neoplasm of the sigmoid colon.  ECF 579-1 at 5, 6, 10.  This led to multiple surgeries, including a temporary colostomy, which was later reversed.  *Id.* at 5.  The medical

---

[5] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

records reflect that Plunkett sometimes refuses medical treatment and is not always compliant with taking medication. ECF 585-4 at 8.

The government opposes Plunkett's Motion at each step of the analysis. Although the government concedes that some of Plunkett's medical conditions may constitute an "extraordinary and compelling reason" in light of the CDC Guidance, ECF 585 at 16, it argues that the conditions are not sufficiently serious to warrant his release. *Id.* at 16-19. Among other things, the government notes that Plunkett is now cancer-free. *Id.* at 19. Moreover, the government asserts that Plunket is ineligible for release because he is a "profound danger" to the community. *Id.* at 21; *see id.* at 20-22. And, the government maintains that the § 3553(a) factors militate against granting Plunkett's Motion. *Id.* at 23-24.

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). But, numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions, including obesity, diabetes, and hypertension, qualify as a compelling reason for compassionate release. *See, e.g., United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, ___ F. Supp. 3d ___, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (concluding that defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason); *United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for

14

compassionate release in light of COVID-19); *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) ("Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release"); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding defendant's age, hypertension, and obesity constituted an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason).

Indeed, as noted, the government concedes that, under the CDC guidance, some of Plunkett's medical conditions may constitute an "extraordinary and compelling reason." ECF 585 at 16. Accordingly, I am satisfied that, given Plunkett's obesity and diabetes, coupled with his other medical conditions, he readily satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Sentencing Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As indicated, the government contends that the factors under 18 U.S.C. § 3553(a) militate against granting Plunkett's Motion. ECF 585 at 23. According to the government, Plunkett "was

15

an integral, high-ranking member of a major cocaine-trafficking organization." *Id.* at 22. And, the government argues that, if defendant is released, he "might again return to the narcotics-trafficking business." *Id.*

The government correctly observes that the defendant pleaded guilty to participating in a large-scale drug trafficking organization. *See* ECF 585 at 22. And, the gravity of Plunkett's offense and his criminal history cannot be minimized.

Although drug trafficking is generally associated with violence, there were no allegations that this conspiracy resorted to the use of violence. ECF 579 at 12. Moreover, none of Plunkett's prior convictions involved weapons or allegations of violence. *Id.* Further, his last criminal conviction, at the age of 26, occurred more than a decade before the underlying offense. ECF 579-3, ¶ 32. In that case, the defendant was sentenced to ten years for a felony drug offense and was released in 2004, after serving about half of that sentence. *Id.*

Defendant's background is notable for its challenges. He was placed in foster care at the age of one and grew up on welfare and in "a drug infested area." ECF 579-3, ¶ 54. He began using marijuana at the age of fifteen and began drinking at the age of seventeen. *Id.* ¶¶ 62-63.

Plunkett's good behavior while incarcerated warrants recognition under 18 U.S.C. § 3553(a). Over the course of more than nine years in prison, defendant has "only had one minor disciplinary infraction." *See* ECF 579-4. Moreover, he obtained his GED in 2012. ECF 579-4 at 1. He enrolled in the Residential Drug Abuse Program and has worked in the facility's warehouse since September 2019. *Id.* Defendant's efforts at rehabilitation bode well for him, and suggest that he would not pose a danger to the community if released.

Further, as noted, Plunkett has already served about 112 months in prison, which equates to about 62% of his total sentence. ECF 579 at 12. Factoring in credit for good conduct,

Plunkett has served about 75% of his sentence. ECF 579 at 12. Adjusting for good time, defendant has approximately 29 months left until his expected release. *Id.*

The defendant is the father of two children. ECF 579-3, ¶ 58. He asserts that he has a release plan, by which he will live in Randallstown, Maryland with his partner of thirteen years. ECF 579 at 13. His partner has a secure government job with the United States Postal Service. *Id.* She also has an eight-year-old daughter for whom the defendant cared prior to his arrest. ECF 579-3, ¶ 57.

Finally, Plunkett's incarceration, with deteriorating health conditions and in the midst of a global pandemic, has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

As I see it, Plunkett's incarceration for a period of about 112 months is sufficient to serve the goals of incapacitation, deterrence, retribution, and rehabilitation. Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Plunkett's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one year of home confinement as a condition of supervised release.

## V. Conclusion

For the forgoing reasons, I shall grant the Motion (ECF 577). Plunkett's sentence shall be reduced to time served plus 14 days, to be followed by three years of supervised released. And, as a condition of supervised release, I will require a one-year period of home confinement.

An Order follows, consistent with this Memorandum Opinion.


Date:   September 23, 2020                               /s/
                                              Ellen Lipton Hollander
                                              United States District Judge